# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TERRY VON ASTEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARSTRAT, LLC, <br><br> Defendant. | Case No.: 20-cv-233 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Terry Von Asten is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Defendant ARstrat, LLC ("ARstrat") is a foreign limited liability company with its primary offices located at 9800 Centre Parkway, Suite 1100, Houston, Texas 77036.

6. ARstrat is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. ARstrat is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. *See* http://arstrat.com/about-us/ (visited January 29, 2020) ("ARstrat is an industry leading collection and bad debt resolution provider for the healthcare industry.")

8. ARstrat is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or around November 21, 2019, ARstrat mailed a debt collection letter to Plaintiff regarding one or more alleged debts. A copy of such letter is attached to this Complaint as Exhibit A.

10. Upon information and belief, the alleged debt(s) referenced by Exhibit A were incurred for personal medical services.

11. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by ARstrat to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication ARstrat mailed to Plaintiff regarding at least some of the alleged debts referenced therein.

14. Exhibit A includes the following representations which largely reflect the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

2

> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. <u>Exhibit A</u> also includes the following representation: "[Blank] has placed this account with our office for collection."

16. <u>Exhibit A</u> also states:

"[Blank] has a Patient Financial Assistance program for which you may qualify. Please contact us at (866) 269-1731 for additional information concerning this program.

17. <u>Exhibit A</u> later displays a number of accounts on the first page and a number of additional accounts on the third page.

18. <u>Exhibit A</u> represents that the "Creditor" of the accounts on page 1 is "MAYO CLINIC – ROCHESTER," ("Mayo Clinic") but for other accounts, Mayo Clinic is identified under the designator "CLIENT NAME."

19. Further, <u>Exhibit A</u> identifies three accounts with no one at all designated as the "creditor" or "client."

20. It is unclear whether Mayo Clinic is the current creditor for some or all of the accounts on <u>Exhibit A</u> – particularly the accounts on page 3 of <u>Exhibit A</u>.

21. Referring to the accounts on page 3 of <u>Exhibit A</u>, ARstrat's identification of Mayo Clinic as the "Client" does not clearly identify Mayo Clinic as the creditor of those specific accounts. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) ("Thus, standing alone the fact that the form letter included the words 'Asset Acceptance, LLC' did not establish compliance with § 1692g(a)(2). The Act required Fulton's letter to identify Asset Acceptance as the 'creditor to whom the debt is owed.' 15 U.S.C. § 1692g(a)(2).

3

The letter had to make that identification clearly enough that the recipient would likely understand it.").

22. In *Tourgeman v. Collins Fin. Services*, the Ninth Circuit held that misidentifying the original creditor is a violation of 15 U.S.C. § 1692e.

> We are persuaded that, in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way. Unlike mislabeling portions of a total debt as principal rather than interest — literally false, but meaningful only to the "hypertechnical" reader, see *Wahl*, 556 F.3d at 645 — the factual errors in Paragon Way's letters to Tourgeman could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.

755 F.3d 1109, 1121 (9th Cir. 2014) (reversing the district court, and granting summary judgment in favor of the plaintiff); *see also Schneider v. TSYS Total Debt Mgmt.*, 2006 U.S. Dist. LEXIS 48177 (E.D. Wis. July 13, 2016).

23. Failing to identify the current creditor is misleading to the consumer because, among other things, it undermines the perceived legitimacy of the collection effort.

24. Medical debt, like most debt, is freely assignable. There are companies whose primary business model is the purchase and collection of defaulted medical debt, for example, Pendrick Capital Partners, LLC. *See, e.g. Leeb v. Nationwide Credit Corp.*, No. 12 C 913, 2013 U.S. Dist. LEXIS 167558, *3 (N.D. Ill. Nov. 21, 2013).

25. Failure to identify the current creditor inherently involves the risk of paying the wrong party.

26. If the unsophisticated consumer sent payment to Mayo Clinic and Mayo Clinic has sold the debt to a third party, the payment would not satisfy the alleged debt owed to the correct creditor, who would be within its rights to continue collection efforts or even file a lawsuit to collect the debt.

4

27. Failing to identify the "original creditor" also discourages the consumer from requesting the name and address of the original creditor. *See* 15 U.S.C. § 1692g(a)(5). The consumer would believe that a request for the name and address of the original creditor would merely result in the debt collector responding with the same incorrect information. This is why the FDCPA requires the debt collector provide *notice* of the consumer's right to request the name and address of the original creditor and *not* the information itself. 15 U.S.C. § 1692g(a)(5). In contrast, 15 U.S.C. §§ 1692g(a)(1) and (2) require that the debt collector provide specific information about the debt itself – the amount of the debt and the identity of the *current* creditor.

28. Plaintiff read Exhibit A.

29. Plaintiff was misled and confused by Exhibit A.

30. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

31. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist.

5

LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

33. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*,

7

2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

34. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

35. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

36. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

37. 15 U.S.C. § 1692g(a) provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> …
>  (2) the name of the creditor to whom the debt is owed;
> …

## COUNT I - FDCPA

38. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

39. Exhibit A lists three accounts without naming the client or creditor of the account.

40. Exhibit A also states: "[Blank] has placed this account with our office for collection," and "[Blank] has a Patient Financial Assistance program for which you may qualify. Please contact us at (866) 269-1731 for additional information concerning this program."

41. By failing to clearly identify the current creditor of Plaintiff's alleged debts, Exhibit A includes representations which are false, deceptive, and misleading as to the character and legal status of such debt.

42. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a).

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of a class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the Complaint in this action, (c) which displays accounts without a person or entity designated under "Creditor Name" or "Client Name," (d) mailed between February 13, 2019 and February 13, 2020, inclusive, (e) that was not returned by the postal service.

44. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the class.

45. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

46. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

47. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

48. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

49. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 13, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com